# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS        (SBN: 108325)
mark@geragos.com
BEN J. MEISELAS         (SBN: 277412)
ben@geragos.com
MATTHEW M. HOESLY    (SBN: 289593)
mhoesly@geragos.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON    (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER         (SBN: 231335)
mmeuser@dhillonlaw.com
NITOJ P. SINGH          (SBN: 265005)
nsingh@dhillonlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **GONDOLA ADVENTURES, INC.**, a California Corporation; **HERNANDEZ PRODUCTIONS, INC.**, a California Corporation; **KING'S PET GROOMING, INC.**, a California Corporation dba KING's MOBILE PET SPA; **SOL DE MEXICO, INC.**, a California Corporation dba CIELITO LINDO RESTAURANT; **WILDFIRE INC.**, a California Corporation dba WILDFIRE LIGHTING; **YBANZ GONZALEZ INC.**, a California Corporation dba LA SIRENITA; | **CASE NO.: 2:20-cv-3789**<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND DAMAGES**<br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**YREKA FOOD ENTERPRISES, LLC,**
a limited liability company;

Plaintiffs,

vs.

**GAVIN NEWSOM**, in his official capacity as Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **SONIA Y. ANGELL, MD, MPH**, in her official capacity as the Director and State Public Health Officer; **ERIC GARCETTI**, in his official capacity as Mayor of Los Angeles; **BARBARA FERRER**, in her official capacity as the Los Angeles County Director and Public Health Officer; **ALEX VILLANUEVA**, in his official capacity as the Los Angeles County Sheriff; **HILDA SOLIS**, in her official capacity as a Los Angeles County Supervisor; **MARK RIDLEY-THOMAS**, in his official capacity as a Los Angeles County Supervisor; **SHEILA KUEHL**, in her official capacity as a Los Angeles County Supervisor; **JANICE HAHN**, in her official capacity as a Los Angeles County Supervisor; **KATHRYN BARGER**, in her official capacity as a Los Angeles County Supervisor; **DR. ROBERT LEVIN**, in his official capacity as the Ventura County Director and Public Health Officer; **WILLIAM AYUB**, in his official public capacity as the Ventura County Sheriff; **STEVE BENNETT**, in his official capacity as a Ventura County Supervisor; **LINDA PARKS**, in her official capacity as a Ventura County Supervisor; **KELLY LONG**, in her

official capacity as a Ventura County Supervisor; **BOB HUBER**, in his official capacity as a Ventura County Supervisor; **JOHN ZARAGOZA**, in his official capacity as a Ventura County Supervisor; **DR. NICHOLE QUICK**, in her official capacity as the Orange County Director and Public Health Officer; **DON BARNES**, in his official capacity as the Orange County Sheriff; **MICHELLE STEEL**, in her official capacity as an Orange County Supervisor; **ANDREW DO**, in his official capacity as an Orange County Supervisor; **DONALD WAGNER**, in his official capacity as an Orange County Supervisor; **DOUG CHAFFE**, in his official capacity as an Orange County Supervisor; **LISA BARTLETT**, in her official capacity as an Orange County Supervisor; **CAMERON KAISER**, in his official capacity as the Riverside County Public Health Officer; **CHAD BIANCO**, in his official capacity as a Riverside County Sheriff; **KEVIN JEFFRIES**, in his official capacity as a Riverside County Supervisor; **KAREN SPIEGEL**, in her official capacity as a Riverside County Supervisor; **CHUCK WASHINGTON**, in his official capacity as a Riverside County Supervisor; **V. MANUEL PEREZ**, in his official capacity as a Riverside County Supervisor; and **JEFF HEWITT**, in his official capacity as a Riverside County Supervisor,

     Defendants.

     NOW COME the above-named plaintiffs Gondola Adventures, Inc., Hernandez Productions, Inc., King's Pet Grooming, Inc., Sol De Mexico, Inc., Wildfire Inc., Ybanz

Gonzalez Inc. and Yreka Food Enterprises, LLC (hereafter collectively referred to as "Plaintiffs"), by and through their attorneys of record, Geragos & Geragos, APC and Dhillon Law Group Inc., as and for claims against the above-named Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Sonia Y. Angell, MD, MPH, in her official capacity as the Director and State Public Health Officer; Eric Garcetti, in his official capacity as Mayor of Los Angeles; Barbara Ferrer, in her official capacity as the Los Angeles County Director and Public Health Officer; Alex Villanueva, in his official capacity as the Los Angeles County Sheriff; Hilda Solis, in her official capacity as a Los Angeles County Supervisor; Mark Ridley-Thomas, in his official capacity as a Los Angeles County Supervisor; Sheila Kuehl, in her official capacity as a Los Angeles County Supervisor; Janice Hahn, in her official capacity as a Los Angeles County Supervisor; Kathryn Barger, in her official capacity as a Los Angeles County Supervisor; Dr. Robert Levin, in his official capacity as the Ventura County Director and Public Health Officer; William Ayub, in his official public capacity as the Ventura County Sheriff; Steve Bennett, in his official capacity as a Ventura County Supervisor; Linda Parks, in her official capacity as a Ventura County Supervisor; Kelly Long, in her official capacity as a Ventura County Supervisor; Bob Huber, in his official capacity as a Ventura County Supervisor; John Zaragoza, in his official capacity as a Ventura County Supervisor; Dr. Nichole Quick, in her official capacity as the Orange County Director and Public Health Officer; Don Barnes, in his official capacity as the Orange County Sheriff; Michelle Steel, in her official capacity as an Orange County Supervisor; Andrew Do, in his official capacity as an Orange County Supervisor; Donald Wagner, in his official capacity as an Orange County Supervisor; Doug Chaffee, in his official capacity as an Orange County Supervisor; Lisa Bartlett, in her official capacity as an Orange County Supervisor; Cameron Kaiser, in his official capacity as the Riverside County Public Health Officer; Chad Bianco, in his official capacity as a Riverside County Sheriff; Kevin Jeffries, in his

official capacity as a Riverside County Supervisor; Karen Spiegel, in her official capacity as a Riverside County Supervisor; Chuck Washington, in his official capacity as a Riverside County Supervisor; V. Manuel Perez, in his official capacity as a Riverside County Supervisor; and Jeff Hewitt, in his official capacity as a Riverside County Supervisor, (hereafter collectively referred to as "Defendants") allege as follows in this Complaint:

## **INTRODUCTION**

1.      In the wake of the novel coronavirus, the State of California hastily instituted a series of state and county-wide orders (the "Orders") to stem the spread of COVID-19. As well-intentioned as these Orders are with respect to the general public's health, safety and welfare, they have come at a steep price with respect to the complete and utter restraint on Californians' civil rights and liberties. This mass action challenges the constitutionality of Defendants' Orders to curb Plaintiffs' civil rights and liberties by ordering draconian "shelter-in-place" orders and effectively shuttering so-called "Non-Essential" businesses all across the State of California.

2.      If allowed to stand, Defendants' Orders will not only continue to violate Plaintiffs' rights under both the California and U.S. Constitutions, but will continue to inflict massive and widespread economic damage to Plaintiffs—all while unconstitutionally placing the burden of Defendants' respective Orders on the backs of both small and large "Non-Essential" businesses—such as those of Plaintiffs—who have already been financially crippled, forced to shut their doors for business and to conduct mass layoffs. Indeed, some of these Plaintiffs' "Non-Essential" businesses might never financially recover as a result of Defendants' Orders and may end up entirely out of business. The stakes for immediate relief from this Court for Plaintiffs could not be higher.

3.      Accordingly, Plaintiffs bring this mass action challenging the Constitutionality of Defendants' Orders, which have deprived them of numerous rights and liberties under both the U.S. and California Constitutions. In doing so, Plaintiffs seek: (1)

equitable and injunctive relief to enjoin the enforcement of Defendants' Orders; (2) declaratory relief from this Court in declaring that Defendants' Orders violate Plaintiff's civil rights under: (a) 42 U.S.C. Section 1983 of the Federal Civil Rights Act ("Section 1983"), (b) the Due Process and (c) Equal Protection Clauses of the 5th and 14th Amendments, and (d) Article 1 Sections 1, 7 and 19 of the California Constitution; (3) attorney's fees and costs for the work done by Plaintiffs' counsel in connection with this lawsuit in an amount according to proof; and (4) for such other and further relief as the Court deems just and appropriate.

## JURISDICTION, VENUE, AND RELIEF

4.     This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to due process and equal protection rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

5.     The Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work in, exercise their authority in their official capacities, and will continue to enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

## PARTIES

6.     Plaintiff Gondola Adventures, Inc., at all relevant times, is and was a California Corporation organized and authorized to do business and doing business in the State of California. Located in Newport Beach, California (Orange County), Gondola Adventures operates a gondola service throughout Newport Beach's canals and waterways that employed upwards of forty (40) employees, all of whom have all been laid off since Governor Newsom and the County of Orange instituted their respective "shut-down" orders,

despite the fact that Gondola Adventures could have safely operated their business within the CDC's recommended social distancing guidelines.

7.     Plaintiff Hernandez Productions, Inc., at all relevant times, is and was a California Corporation organized and authorized to do business and doing business in the State of California. Located in South El Monte, California (Los Angeles County), Hernandez Productions is an entertainment business that employed upwards of thirty-five (35) employees, all of whom have all been laid off since Governor Newsom and the County of Los Angeles instituted their respective "shut-down" orders, despite the fact that Hernandez Productions could have safely operated their business within the CDC's recommended social distancing guidelines.

8.     Plaintiff King's Pet Grooming, Inc. dba King's Mobile Pet Spa, at all relevant times, is and was a California Corporation organized and authorized to do business and doing business in the State of California. Located in Burbank, California and largely operating in Los Angeles and Ventura counties, King's Mobile Pet Spa has owned, operated, and/or managed a mobile pet grooming business since 2017, employing around seven (7) employees, most of whom have been laid off since Governor Newsom, Mayor Garcetti and the County of Los Angeles instituted their respective "shut-down" orders, despite the fact that the business could have safely operated within the CDC's recommended social distancing guidelines and other health related guidelines.

9.     Plaintiff Sol De Mexico, Inc. dba Cielito Lindo Restaurant, at all relevant times, is and was a California Corporation organized and authorized to do business and doing business in the State of California. Located in South El Monte, California (Los Angeles County), Sol De Mexico has owned, operated, and/or managed a Mexican Restaurant since 1986 and employed upwards of fifty (50) employees, most of whom have all been laid off since Governor Newsom and the County of Los Angeles instituted their respective "shut-down" orders, despite the fact that Sol De Mexico could have safely operated their business within the CDC's recommended social distancing guidelines.

Although Sol De Mexico attempted to provide carry-out and delivery services for one (1) week, it eventually had to fully close since the business is located in an industrial area that has all been shut down due to these same orders.

10.     Plaintiff Wildfire Inc., dba Wildfire Lighting, at all relevant times, is and was a California Corporation organized and authorized to do business and doing business in the State of California. Located in Los Angeles County, Wildfire Lighting has been in business since 1989 manufacturing special effects lighting equipment for the Hollywood entertainment industry. At the time that Wildfire Lighting was declared a "Non-Essential" business, it had five (5) full-time employees—two (2) of whom have already been laid off and one (1) of whom is expected to be laid off by the end of this week. Because of the nature of Wildfire Lighting's business, it could easily follow the CDC's guidelines of social distancing without being forced to have entirely closed down its business.

11.     Plaintiff Ybanz Gonzalez Inc., dba La Sirenita, at all relevant times, is and was a California Corporation organized and authorized to do business and doing business in the State of California. Located in Los Angeles and Ventura Counties, Ybanz Gonzalez opened its first Mexican Restaurant in 1994 and currently owns, operates, and/or manages five (5) Mexican Restaurants, three (3) of which have been able to do carryout and two (2) of which have been closed since Governor Newsom and the County of Ventura instituted their respective "shut-down" orders, despite the fact that Ybanz Gonzalez could have safely operated their business within the CDC's recommended social distancing guidelines.

12.     Plaintiff Yreka Food Enterprises, LLC, at all relevant times, is and was a limited liability company organized and authorized to do business and doing business in the State of California. Located throughout Los Angeles, Orange and Riverside Counties, Yreka Food Enterprises currently owns, operates, and/or manages six (6) Ruby's Dinner franchises located in Orange and Los Angeles Counties. Yreka Food Enterprises also owns, operates, and/or manages one (1) Pronto Café franchise located in Los Angeles County and three (3) Auntie Anne's Pretzel Franchises in Los Angeles, Orange, and Riverside Counties.

It also owns one (1) Charley's Subs located in Los Angeles County. As a result of being deemed a "Non-Essential" business, Yreka Foods Enterprises has had to lay off approximately 400 employees among these 11 franchise restaurants in these three counties.

13. Defendant Gavin Newsom ("Newsom") is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed Executive Order N-33-20 (the "Executive Order") on March 17, 2020.

14. Defendant Xavier Becerra ("Becerra") is made a party to this Action in his official capacity as the Attorney General of California. Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State. Cal. Const. Art. V, § 13.

15. Defendant Sonia Y. Angell, MD, MPH ("Dr. Angell") is made a party to this Action in her official capacity as the Director and State Public Health Officer. Dr. Angell is sued herein in her official capacity under the rule of *Ex Parte Young* to challenge the constitutionality of her office's list of "Essential Critical Infrastructure Workers" which was issued by Dr. Angell on March 22, 2020 to complement Newsom's Executive Order. See *Ex Parte Young*, *Id*.

16. Defendant Eric Garcetti ("Garcetti") is made a party to this Action in his official capacity as the Mayor of Los Angeles in the State of California. Garcetti is sued herein in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of his Civil Order, which was instituted by Garcetti on March 15, 2020, which shut down all "non-essential" businesses. See *Ex Parte Young*, 209 U.S. 123, 152-154 (1908).

17. Defendant Barbara Ferrer ("Ferrer") is made a party to this Action in her official capacity as the Los Angeles County Director and Public Health Officer. Ferrer signed the Los Angeles County Order on or about March 17, 2020.

18. Defendant Alex Villanueva ("Villanueva") is made a party to this Action in

his official capacity as the Los Angeles County Sheriff. Under California law, Villanueva has the responsibility to enforce the Los Angeles County Order in Los Angeles County. *See* Cal. Gov't. Code § 26601.

19.      Defendant Hilda Solis ("Solis") is made a party to this Action in her official capacity as a member of the Los Angeles County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

20.      Defendant Mark Ridley-Thomas ("Ridley-Thomas") is made a party to this Action in his official capacity as a member of the Los Angeles County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

21.      Defendant Sheila Kuehl ("Kuehl") is made a party to this Action in her official capacity as a member of the Los Angeles County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

22.      Defendant Janice Hahn ("Hahn") is made a party to this Action in her official capacity as a member of the Los Angeles County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

23.      Defendant Kathryn Barger ("Barger") is made a party to this Action in her official capacity as a member of the Los Angeles County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal.

Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

24.     Defendant Dr. Robert Levin ("Dr. Levin") is made a party to this Action in his official capacity as the Ventura County Director and Public Health Officer. Dr. Levin signed the Ventura County Order on or about March 17, 2020.

25.     Defendant William Ayub ("Ayub") is made a party to this Action in his official public capacity as the Ventura County Sheriff. Under California law, Ayub has the responsibility to enforce the Ventura County Order in Ventura County. *See* Cal. Gov't. Code § 26601.

26.     Defendant Steve Bennett ("Bennett") is made a party to this Action in his official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

27.     Defendant Linda Parks ("Parks") is made a party to this Action in her official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

28.     Defendant Kelly Long ("Long") is made a party to this Action in her official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

29.     Defendant Bob Huber ("Huber") is made a party to this Action in his official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code §

25000, *et seq*.; Cal. Health & Safety Code § 101000.

30.     Defendant John Zaragoza ("Zaragoza") is made a party to this Action in his official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

31.     Defendant Dr. Nichole Quick ("Dr. Quick") is made a party to this Action in her official capacity as the Orange County Director and Public Health Officer. Dr. Quick signed the Orange County Order on or about March 17, 2020.

32.     Defendant Don Barnes ("Barnes") is made a party to this Action in his official public capacity as the Orange County Sheriff. Under California law, Barnes has the responsibility to enforce the Orange County Order in Orange County. *See* Cal. Gov't. Code § 26601.

33.     Defendant Michelle Steel ("Steel") is made a party to this Action in her official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

34.     Defendant Andrew Do ("Do") is made a party to this Action in his official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

35.     Defendant Donald Wagner ("Wagner") is made a party to this Action in his official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code §

25000, *et seq*.; Cal. Health & Safety Code § 101000.

36.     Defendant Doug Chaffee ("Chaffee") is made a party to this Action in his official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

37.     Defendant Lisa Bartlett ("Bartlett") is made a party to this Action in her official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

38.     Defendant Cameron Kaiser ("Kaiser") is made a party to this Action in his official capacity as the Riverside County Director and Public Health Officer. Kaiser signed the Riverside County Order on or about March 17, 2020.

39.     Defendant Chad Bianco ("Bianco") is made a party to this Action in his official public capacity as the Riverside County Sheriff. Under California law, McMahon has the responsibility to enforce the Riverside County Order in Riverside County. *See* Cal. Gov't. Code § 26601.

40.     Defendant Kevin Jeffries ("Jeffries") is made a party to this Action in his official capacity as a member of the Riverside Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

41.     Defendant Karen Spiegel ("Spiegel") is made a party to this Action in her official capacity as a member of the Riverside Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code §

25000, *et seq*.; Cal. Health & Safety Code § 101000.

42.     Defendant Chuck Washington ("Washington") is made a party to this Action in his official capacity as a member of the Riverside Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

43.     Defendant V. Manuel Perez ("Perez") is made a party to this Action in his official capacity as a member of the Riverside Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

44.     Defendant Jeff Hewitt ("Hewitt") is made a party to this Action in his official capacity as a member of the Riverside Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

45.     As alleged herein, Defendants are responsible for the implementation of various Executive Order(s) and other Civil Orders ("Orders") that are in direct violation of the U.S. and California Constitutions, including but not limited to, 42 U.S.C. Section 1983. Accordingly, each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

## FACTUAL ALLEGATIONS

46.     The global COVID-19 pandemic brought on by the Wuhan Coronavirus has caused catastrophic and unprecedented economic damage across the globe, and with it, significant loss of life and fundamental changes to both world and national economies, and in specific, the manner in which businesses are permitted to run, if at all. To be sure, State and U.S. officials have faced tremendous adversity in planning, coordinating, and at times,

executing effective nationwide and statewide policies to protect the general public's health, safety and welfare during this time of crisis. However, these policies, as well-intentioned as they may be, have had an unlawful and disparate effect on some people and their businesses over other people and their businesses to the point where life, liberty and the pursuit of happiness has been ripped away from law-abiding citizens and businesses.

47.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of COVID-19.[1]

48.     Since the initial outbreak of COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death toll related to the virus have decreased substantially, by an order of magnitude. Despite such revisions, Defendants have increasingly restricted—where not outright banned— Plaintiffs' engagement in constitutionally-protected activities.[2]

49.     In this case, and with respect to the State of California, Defendant Newsom issued a "State of Emergency" order on March 4, 2020 in response to the threat of the spread of COVID-19 throughout California's communities. In so doing, Defendant Newsom subsequently issued Executive Order N-33-20 on March 19, 2020 ("Executive Order"), which, among other things, mandated that "all individuals living in the State of California" were to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors at outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

50.     Defendant Newsom's Executive Order went on to acknowledge that the federal government had "identified 16 critical infrastructure sectors[3] whose assets, systems,

---

[1] As of the date of this filing, the Proclamation of a National Emergency can be found online at: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[2] *See, e.g.*, https://www.usatoday.com/story/news/investigations/2020/04/09/coronavirus-deaths-u-s-could-closer-60-k-new-model-shows/5122467002/

[3] Including the: (1) Chemical Sector, (2) Commercial Facilities Sector, (3) Communications Sector, (4) Critical Manufacturing Sector, (5) Dams Sector, (6) Defense Industrial Base

and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Defendant Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being."

51.     Further, Defendant Newsom declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus." Thereafter, Defendant Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665[4]."

52.     As a result of the issuance of Defendant Newsom's Order, California businesses, such as those of Plaintiffs, which were not part of the 16 "critical infrastructure sectors" described above, and therefore, were deemed "Non-Essential" businesses, were effectively ordered, under penalty of fine and imprisonment, to shut down.

53.     Likewise, Defendants Ferrer, Dr. Levin, Dr. Quick and Kaiser issued similar "stay-in-place" and "shut-down" orders for all "Non-Essential" businesses on or about March 17, 2020 for the Counties of Los Angeles, Ventura[5], Orange and Riverside[6],

_____

Sector, (7) Emergency Services Sector, (8) Energy Sector, (9) Financial Services Sector, (10) Food and Agriculture Sector, (11) Government Facilities Sector, (12) Healthcare and Public Health Sector, (13) Information Technology Sector, (14) Nuclear Reactors Materials, and Waste Sector, (15) Transportation Systems Sector, and (16) Water and Wastewater Systems Sector.

[4] Which provides that: "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

[5] On April 18, 2020, the County of Ventura, through Defendant Dr. Levin, modified its Order to begin allowing some businesses that do not serve the public to operate using no more than 10 employees. Since the Order was initially implemented on March 17, 2020,

respectively ("County Orders"). Since the passage of the County Orders, Defendants Villanueva, Ayub, Barnes and Bianco ("County Sheriffs") have sought to vigorously enforce them against Plaintiffs and other "Non-Essential" businesses.

54.     Additionally, on March 22, 2020, Defendant Dr. Angell issued a comprehensive directive[7] enumerating all of the various types of "Essential Critical Infrastructure Workers" that were to "help state, local, tribal and industry partners as they work to protect communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security".

55.     Taken together, Defendants' Orders have caused widespread and catastrophic damage to the California economy through the government-mandated closure of not only Plaintiffs' business, but millions of other "Non-Essential" businesses across California. As a result, Plaintiffs have faced numerous difficulties with respect to their financial obligations, have been forced to lay off significant numbers of their employees, and face a very real and a very existential threat to their collective survival and business operations.

56.     For example, Plaintiff Sol De Mexico, which has been in business since 1986, was forced to lay off over fifty (50) of its employees since Governor Newsom, Mayor Garcetti and the County of Los Angeles instituted their respective "shut-down" orders, despite the fact that Sol De Mexico could have safely operated their business within the CDC's recommended social distancing guidelines. Although Sol De Mexico attempted to provide carry-out and delivery services for one (1) week, it eventually had to close since the business is located in an industrial area that has been shut down due to these same orders.

---

there have only been 416 cases of the coronavirus and only 13 related deaths as of April 18, 2020. https://www.latimes.com/california/story/2020-04-19/ventura-county-eases-coronavirus-stay-home-order

[6] On April 20, 2020, the County of Riverside, through Defendant Kaiser, modified its Order to begin allowing some "Non-Essential" businesses to open, including outdoor activities, albeit with limitations and restrictions. https://nbcpalmsprings.com/2020/04/20/riverside-county-allows-outdoor-activities-to-reopen-with-restrictions-including-golf-courses/

[7] https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

As a result, Sol De Mexico has had to permanently close its doors for the first time since 1986 and has suffered tremendous financial hardship on account of the shut-down.

57.     Likewise, Plaintiff King's Pet Grooming, Inc., which was founded in 2017, operates a mobile pet grooming business that was also forced to lay off its groomers and administrative staff on account of Governor Newsom, Mayor Garcetti and the County of Los Angeles's respective "shut-down" orders. Despite the fact that the nature of King's Pet Grooming, Inc.'s business is structured in such a way that allows it to comply with the CDC's "social-distancing" guidelines, and despite the fact that King's is already very proactive with health, safety and sanitization practices (since it is AKC certified), it was ordered to shut down. Moreover, while King's business type was actually declared "essential" on March 22, 2020 by Defendant Angell, on April 3, 2020, Defendant Garcetti publicly announced that "mobile pet groomers are not essential." As a result, King's permanently shut down and has suffered extreme financial hardship as it still has to pay its overhead costs, such as phones, insurance and fleet operations, for which it recently added two additional mobile vehicles to its pre-COVID shut-down growing business.

58.     While "Essential" businesses continue to operate, and indeed, turn a profit (if not historical profits) during this time of crisis, Plaintiffs' "Non-Essential" businesses have suffered immeasurably at the hands of government overreach and unconstitutionally restrictive orders passed and enforced by Defendants which have had immense disparate impact across every segment or sector of business in California.

59.     Accordingly, Plaintiffs complain against Defendants, and each of them, for violation of the Federal Civil Rights Act, 42 U.S.C. Section 1983 ("FCRA"), to declare and enjoin the enforcement of the following orders:

a. Defendant Newsom's Executive Order N-33-20 issued on March 19, 2020 ("Executive Order");

b. Defendant Dr. Angell's designation of "Essential Critical Infrastructure Workers" issued on March 22, 2020, which referenced Defendant Newsom's

Executive Order issued three (3) days prior (part of the "Executive Order");

    c.   Defendant Garcetti's "Civil Order" issued on March 15, 2020 for Los Angeles County ("Garcetti Order");

    d.   Defendants Ferrer, Dr. Levin, Dr. Quick and Kaiser's Orders issued on or about March 17, 2020 ("County Orders").

60.    Plaintiffs have standing to bring Section 1983 claims since they are aggrieved in fact businesses that are the subject of enforcement of the overbroad and unconstitutional Executive, Garcetti and County Orders (collectively, the "Orders") which have the effect of forcing Plaintiffs—which are a collection of California businesses—to bear a public burden by entirely eviscerating Plaintiffs' ability to operate their respective businesses.

61.    Defendants' Orders are in violation of 42 U.S.C. Section 1983, as is the enforcement of these Orders by Defendants Villanueva, Ayub, Barnes and Bianco ("County Sheriffs"), which should be enjoined under Section 1983, due to the following circumstances:

    a.   The Orders plainly violate the Due Process and Equal Protection Clauses of the 5th and 14th Amendments in that they unconstitutionally and disparately apply one set of rules to businesses arbitrarily deemed "Essential" versus all other businesses (such as Plaintiffs') that are deemed "Non-Essential", which must close pursuant to the Orders. Plaintiffs aver that ALL businesses in the State of California are "Essential" to the health, welfare and well-being of its citizens, and that the general health outcome sought through the passage of these Orders (i.e. lowering the curve of the Wuhan Coronavirus) could be accomplished through less restrictive means.

    b.   The Orders effectively amount to an impermissible "partial" or "complete" taking in violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution in that the prohibition of Plaintiffs' operation of their "Non-Essential" businesses constitutes a regulatory taking of private property, for

public purpose, without providing just compensation therefor. Furthermore, the Orders violates the Takings Clause of the Fifth Amendment in that the complete prohibition on the business operations of "Non-Essential" businesses constitutes an irrational, arbitrary, and capricious law bearing no rational basis to any valid government interest. The notion that the government-ordered shutdown of "Non-Essential" businesses (such as Plaintiffs') is absolutely necessary in curbing the spread of the Wuhan Coronavirus constitutes an unconstitutional infringement on Plaintiffs' civil rights and liberties to operate in a free-market economy. As national and statewide data has recently suggested, the economic impact of the mandatory, unconstitutional closures of "Non-Essential" businesses has had an unnecessarily devastating and unprecedented crippling effect on local and state economies. ALL businesses are 'essential' and necessary to the maintenance of the health, welfare and prosperity of California's citizens.

c.  The Orders further violate the substantive and procedural due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.

d.  The Orders further violate Article 1 Sections 1, 7 and 19 of the California Constitution.

62.   Defendants' Orders are not "narrowly tailored" to further any compelling governmental interest. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "Essential" businesses and activities, provided that social distancing practices are observed. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent business activities provided that Plaintiffs also adhere to the social distancing guidelines currently in place.

63.   Unless and until injunctive relief is granted, Plaintiffs will continue to suffer irreparable harm for which they are left without an adequate remedy at law, in that they are subject to criminal cases (i.e. misdemeanor citations and fines) based on the enforcement of

the Orders by the County Sheriffs. For example, Defendant Newsom has made it a point to "prosecute" and "fine" all non-conforming "Non-Essential" businesses that refuse to close their doors and shut down their lawful business operations during this pandemic.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE FIFTH AMENDMENT**

**Right to travel as enforced by 42 U.S.C. § 1983**

(*By Plaintiffs against All Defendants*)

64.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

65.    While not explicitly defined in the U.S. Constitution, the Supreme Court has "acknowledged that certain unarticulated rights are implicit in enumerated guarantees. … Yet these important but unarticulated rights [association, privacy, presumed innocent, etc.] have nonetheless been found to share constitutional protection in common with explicit guarantees." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-580 (1980).

66.    "The right to travel is a part of the liberty of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 127 (1958).

67.    Courts have found that "[f]reedom of movement is kin to the right of assembly and to the right of association. These rights may not be abridged. *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964).

68.    The Supreme Court has found that this right to travel includes in state, intra state, or foreign travel. *See e.g. Kent v. Dulles*, 357 U.S. at 126 "Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage."

69.    The reason that the right to travel is fundamental is because "[f]reedom of movement, at home and abroad, is important for job and business opportunities – for cultural, political, and social activities – for all the commingling which gregarious man enjoys." *Aptheker,* 378 U.S. at 519-520 (1964). *See also Kent*, 357 U.S. at 126 where

"[t]ravel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values."

70.     Even though we are in a state of emergency and people may abuse the right to travel, citizens do not lose their Constitutional rights. *See Aptheker,* 378 U.S. at 520 "Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society."

71.     When a government practice restricts fundamental rights like the right to travel, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital v. Maricopa County*, 415 U.S. 250, 257-258 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 339-341 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 (1969); *Maher v. Roe*, 432 U.S. 464, 488 (1977).

72.     Both Defendant Newsom's Executive Order and the County Orders (collectively as the "Orders") mandate that Plaintiffs stay at home and shut down their "Non-Essential" businesses.

73.     Requiring Plaintiffs to abstain from conducting business operations, even those in compliance with the CDC's social distancing guidelines, violates Plaintiffs' Constitutional right to travel.

74.     Unless enjoined, Defendants will act under color of state law to deprive Plaintiffs of their right to travel as protected by the Due Process Clause.

75.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

76.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and

restraining enforcement of the Orders.

77.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

#### (*By Plaintiffs against All Defendants*)

78.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

79.     Plaintiffs have a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment.

80.     The Orders and Defendants' enforcement thereof, violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965).

81.     Defendants' Orders, which expressly deprive Plaintiffs of their rights and liberties in lawfully operating their businesses by ordering the closure of "Non-Essential" businesses, did not afford Plaintiffs with a constitutionally adequate hearing to present their case for their businesses to not be shut down. At a minimum, Plaintiffs aver that they should have been able to decide for themselves whether to "shut down" if their businesses / business models were not equipped to properly deal with health and safety guidelines issues by the federal and California state governments in connection with the COVID-19 crisis.

82.     Defendants failed to comply with the procedural and substantive

requirements of the U.S. Constitution in connection with Plaintiffs rights and liberties as they relate to their respective properties / businesses, which would have given Plaintiffs a meaningful opportunity to respond to the proposed Orders and explain how and why they were so deeply flawed and unconstitutional as applied to Plaintiffs.

83.     Because Defendants' decisions in issuing their Orders were made in reliance on procedurally deficient and substantively unlawful processes, Plaintiffs were directly and proximately deprived of their property, and consequently, their ability to lawfully operate their businesses without unconstitutional government overreach.

84.     Because Defendants' decisions were made in reliance upon an arbitrary and capricious interpretation of the California Constitution and related laws and statutes with respect to their ability to order the State-wide "closure" of all "Non-Essential" businesses, Plaintiffs were directly and proximately deprived of their property rights absent substantive due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

85.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

86.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

87.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

### (*By Plaintiffs against All Defendants*)

88.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

89.     At its core, the Equal Protection Clause of the 14th Amendment to the U.S. Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. In other words, persons similarly situated must be similarly treated. Equal protection is extended when the rules of law are applied equally in all like cases and when persons are exempt from obligations greater than those imposed upon others in like circumstances.

90.     The Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially—not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objection.

91.     Defendants have intentionally and arbitrarily categorized California businesses and conduct as either "Essential" or "Non-Essential." Those businesses classified as "Essential," or as participating in "essential services", are permitted to go about their business and activities provided certain social distancing practices are employed. Those classified as "Non-essential," or as engaging in Non-essential activities, are required to shut down and have their workers stay in their residences, unless it becomes necessary for them to leave for one of the enumerated "Essential" activities.

92.     Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to due process and the right to travel (both interstate and intrastate), among others.

93.     Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

94.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

95.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory

relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

96.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

### (*By Plaintiffs against All Defendants*)

97.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

98.     The Supreme Court has long held that "the Fifth Amendment…was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." See *Armstrong v. United States* (1960) 364 U.S. 40, 49.

99.     The California Supreme Court has found that "While the police power is very broad in concept, it is **not without restrictions** in relation to the taking of damaging of property. When it passes **beyond proper bounds in its invasion of property rights**, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation." *House v. Los Angeles County Flood Control Dist.*, 25 Cal.2d 384 (1944). (Emphasis added). The *House* Court went on to specifically list four (4) examples when a taking was not eligible for compensation:  (1) destroying a building in front of a fire so as to create a fire break, (2) destroying a diseased animal, (3) rotten fruit or (4) infected trees.

100.     In this case, none of examples apply to Plaintiffs' situation. Defendants' Orders mandated that because Plaintiffs were "Non-Essential" businesses, they were required to "shut down" and cease all operations as a means to help curb the spread of COVID-19. Such a mandate completely and unconstitutionally deprived Plaintiffs of all economically beneficial use of their businesses without just compensation.

101.     While the "police power" is inherent in a sovereign government and is

reserved for the States in the 10th Amendment to the U.S. Constitution, it is not without constitutional limits. See *Euclid v. Ambler Realty Company,* 272 U.S. 365  (1926) (holding that local governments may protect the general welfare through the enactment of residential zoning ordinances). In California specifically, the Constitution directly gives this power to cities and counties. As such, these agencies (such as the County Defendants) have the power and authority to make and enforce laws to protect public health and safety to the extent that they do not conflict with CA state laws. See Cal. Const. Article XI Section 7; *Miller v. Board of Public Works,* 195 Cal. 477  (1925). However, a government's "police power" in this area is restricted by Constitutional considerations, including the 5th Amendment's "Takings Clause", as well as Due process and Equal Protection.

102.   Defendants' Orders and the enforcement thereof has caused both a complete and total regulatory and physical taking of Plaintiffs' property without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution. At a minimum, the effect of Defendants' Orders constitutes a "partial" taking under the *Penn-Central* three-factor test. See *Penn Central Trans. Co. v. City of New York* , 438 U.S. 104, 124 (1978). As a result, Defendants' blatant violation of the Takings Clause of the 5th Amendment has caused proximate and legal harm to Plaintiffs.

103.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

104.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

105.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

# FIFTH CLAIM FOR RELIEF

## VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Const. Art. 1, § 1)

#### (*By Plaintiffs against All Defendants*)

106.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

107.    Since 1879, the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens. Chief among those rights and liberties are those found in Article 1 of the California Constitution. Article 1, Sections 1 of the California Constitution provides, in pertinent part:

Article 1, Section1:

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

108.    Defendants' Orders have not only interfered with Plaintiffs' rights and liberties as set forth under Article 1, Sections 1, 7, and 19 of the California Constitution, but have further deprived them of the use, enjoyment and ability to operate their respective businesses on account of a discriminatory classification as "Non-Essential" businesses.

109.    Defendants' Orders have proximately and legally caused tremendous financial harm not just to Plaintiffs businesses, but to the entire California economy, which will continue to have deleterious effects unless and until Defendants are enjoined by this Court from enforcing their respective Orders.

110.    California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" *Id.*

111.   California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. *See Jew Ho v. Williamson,* 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (C.C. Cal. 1900).

112.   The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed". *Jew Ho*, 103 F. 10 (C.C. Cal. 1900).

113.   California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all *for depriving persons of their liberty* and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added).

114.   In *Jew Ho v. Williamson,* 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (CC Cal. 1900), the California courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

115.   Requiring Plaintiffs to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

116.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

117.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Const. Art. 1, § 7)

### (*By Plaintiffs against All Defendants*)

118.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

119.    Article 1, Section 7 of the California Constitution provides, in pertinent part:

Article 1, Section 7:

(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this State may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

120.    California's constitutional guarantee of equal protection and the Fourteenth Amendment's guarantee of equal protection are substantially equivalent and analyzed in similar fashion. *Kenneally v. Medical Board,* 27 Cal.App.4th 489 (App. 2 Dist. 1994).

121.    In addition, California's constitutional guaranty of equal protection under Article 1 Section 7 of the California Constitution has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. *People v. Romo*, 14 Cal.3d 189 (1975); *Gray v. Whitmore,* 17 Cal.App.3d 1 (1971).

122.    Requiring Plaintiffs to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

123.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

124.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### SEVENTH CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Const. Art. 1, § 19)

### (*By Plaintiffs against All Defendants*)

125.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

126.    Article 1, Section 19 of the California Constitution provides, in pertinent part:

Article 1, Section 19:

(a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the

- 31 -

court to be the probable amount of just compensation.

127.    California courts have routinely held that the California Constitution provides just compensation to property owners when their land is taken for public use because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Jefferson Street Ventures, LLC v. City of Indio,* 236 Cal.App.4th 1175 (App. 4 Dist. 2015).

128.    Moreover, the principle behind the concept of just compensation for property taken for public use is to put the owner in as good a position pecuniarily as he or she would have occupied if his or her property had not been taken. *City of Carlsbad v. Rudvalis,* 109 Cal.App.4th 667 (App. 4 Dist. 2003).

129.    Finally, the constitutional guarantee of just compensation for property taken by the government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking. *Emeryville Redevelopment v. Harcros Pigments, Inc.*, 101 Cal.App.4th 1083 (App. 1 Dist. 2002).

130.    Requiring Plaintiffs to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

131.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

132.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

///

///

///

///

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF CAL. GOV. CODE § 8572

### Commandeering Private Property or Personnel

### (*By Plaintiffs against Defendant Newsom*)

133.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

134.   The State of California's Government Code Title 2, Chapter 7, Article 3, Section 8572, reads, in pertinent part:

> In the exercise of the emergency powers hereby vested in him during a state of war emergency or *state of emergency*, the Governor is authorized to commandeer or utilize any private property or personnel deemed by him necessary in carrying out the responsibilities hereby vested in him as Chief Executive of the state and *the state shall pay the reasonable value thereof*. (Emphasis added).

135.   On March 4, 2020, and in response to the threat of the spread of COVID-19 throughout California's communities, Defendant Newsom issued a "State of Emergency".

136.   On March 17, 2020, Defendant Newsom subsequently issued Executive Order N-33-20 on March 19, 2020 ("Executive Order"), which, among other things, mandated that "all individuals living in the State of California" were to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors at outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

137.   Defendant Newsom's Executive Order went on to acknowledge that the federal government had "identified 16 critical infrastructure sectors (discussed herein) whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Defendant Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians'

health and well-being."

138.   Further, Defendant Newsom declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus." Thereafter, Defendant Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665[8]."

139.   As a result of the issuance of Defendant Newsom's Order, California businesses, such as those of Plaintiffs, which were not part of the 16 "critical infrastructure sectors" described above, and therefore, were deemed "Non-Essential" businesses, were effectively ordered, under penalty of fine and imprisonment, to shut down and cease doing their lawful daily business activities.

140.   By virtue of his Executive Order, Defendant Newsom commandeered and utilized Plaintiffs' "Non-Essential" businesses for the purpose of slowing the spread of COVID-19. To date, however, the State of California has not paid Plaintiffs the "reasonable value thereof" in exchange for Defendant Newsom's commandeering and utilization of Plaintiffs' "Non-Essential" businesses.

141.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under Cal. Gov. Code § 8572. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California C.C.P. Section 1021.5.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs requests that this Court:

(1)   Issue a declaratory judgment with the following:

---

[8] Which provides that: "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

a. Declaration that Defendant Newsom's March 19, 2020 "Executive Order N-33-20" ("Executive Order") is null and void, of no effect, as:

    i. unconstitutional under the Fifth Amendment;

    ii. unconstitutional under the Fourteenth Amendment;

    iii. arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or California Constitutions;

    iv. contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or California Constitutions;

    v. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or California Constitutions.

b. Declaration that Defendant Dr. Angell's March 22, 2020 enumerated list of "Essential Critical Infrastructure Workers" following Defendant Newsom's "Executive Order N-33-20" is null and void, of no effect, as:

    i. unconstitutional under the Fifth Amendment;

    ii. unconstitutional under the Fourteenth Amendment;

    iii. arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or California Constitutions;

    iv. contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or California Constitutions;

    v. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or California Constitutions.

c. Declaration that Defendant Garcetti's March 15, 2020 "Civil Order" ("Garcetti Order") is null and void, of no effect, as:

    i. unconstitutional under the Fifth Amendment;

    ii. unconstitutional under the Fourteenth Amendment;

      iii.   arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or California Constitutions;

      iv.   contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or California Constitutions;

      v.   in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or California Constitutions.

  d.  Declaration that Defendants Ferrer, Dr. Levin, Dr. Quick and Kaiser's Orders, all issued on or about March 17, 2020 "County Orders" are null and void, of no effect, as:

      i.   unconstitutional under the Fifth Amendment;

      ii.   unconstitutional under the Fourteenth Amendment;

      iii.   arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or California Constitutions;

      iv.   contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or California Constitutions;

      v.   in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or California Constitutions.

(2)   Set aside and hold unlawful Defendants' Orders.

(3)   Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants, including the Defendant County Sheriffs, from enforcing the Orders.

(4)   Issue a TRO and a preliminary injunction preventing Defendants from enforcing or implementing their Orders until this Court decides the merits of this lawsuit.

(5)   Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from enforcing the Orders unless they are issued in accordance with all procedural and substantive due process requirements of the U.S. Constitution.

(6)   Award Plaintiffs damages arising out of their Section 1983 Claims, and specifically under the Fifth Amendment of the U.S. Constitution and Article 1 Section 19 of the California Constitution's Takings Clause(s).

(7)   Award Plaintiffs the reasonable value of the loss of their businesses by virtue of Defendant Newsom's Executive Order pursuant to Cal. Gov. Code § 8572.

(8)   Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

(9)   Grant all other such relief as the Court may deem just and proper.

Dated:  April 23, 2020                **GERAGOS & GERAGOS, APC**

                                         _/s/ Mark J. Geragos_
                                         Mark J. Geragos, SBN 108325
                                         Ben J. Meiselas, SBN 277412
                                         Matthew M. Hoesly, SBN 289593

                                         **DHILLON LAW GROUP INC.**

                                         _/s/  Hameet K. Dhillon_
                                         Harmeet K. Dhillon, SBN 207873
                                         Mark P. Meuser, SBN 231335
                                         Nitoj P. Singh, SBN 265005

                                         *Attorneys for Plaintiffs*

**JURY TRIAL DEMANDED**